UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ANTHONY S. CUNNINGHAM,                          :

                                                :

                         Plaintiff,             :          **REPORT AND**

                                                :          **RECOMMENDATION**

             -v.-                               :

                                                :          06  Civ. 4083 (CM) (GWG)

NEW YORK CITY TRANSIT AUTHORITY,
                         Defendant              :
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Anthony S. Cunningham commenced this action under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), against defendant New York City Transit

Authority ("NYCTA"), alleging that the NYCTA intentionally discriminated against him and

retaliated against him on account of his race when it terminated him from the position of

probationary bus operator.  The NYCTA now moves for summary judgment pursuant to Fed. R.

Civ. P. 56.  For the reasons below, the NYCTA's motion should be granted.

I.  INTRODUCTION

    A.  Factual Background

The Court accepts as true Cunningham's version of the facts where supported by

admissible evidence and draws all factual inferences in Cunningham's favor.  See, e.g.,

McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  Except as otherwise noted, the

following summary reflects Cunningham's version of the relevant events or undisputed

testimony.

Cunningham had previously driven a minivan for Atlantic Paratransit from

approximately November 2001 until December 2001.  See Deposition of Anthony S.

Cunningham, dated Jan. 11, 2007 ("Pl. Dep.") (attached as Ex. D to Declaration of Baimusa

Kamara, dated Mar. 15, 2007 ("Kamara Dec.") (attached to Defendants' [sic] Notice of Motion for Summary Judgment, filed June 1, 2007 (Docket #19) ("Not. of Mot."))), at 26-28.  On one occasion thereafter Cunningham had training in bus driving.  See id. at 30.

Cunningham started work for the NYCTA on January 24, 2005 as a probationary or "student" bus operator and was assigned to a training course taught by Robert Koff.  See id. at 18-19, 31.  The NYCTA bus operator training course lasts 7-10 days and is taught by NYCTA employees who were formerly bus operators.  See id. at 20-21.  After seven days of training, a road test is given.  See id. at 21.  If the student fails the exam, the student is given two more days of training, with a new instructor, and then a second road test.  See id. at 22.  If unsuccessful, the student is given one more day of training and a third exam.  See id. at 22-23.  If the student fails all three exams, his or her employment is terminated.  See id. at 23.

There were three other students in Cunningham's initial training class: Joe Gibbons, who is white; Ken Bacchas, who is black and of Jamaican origin; and Michael Ly, who is Asian.  See id. at 31-32.  Gibbons had worked as a bus driver for Greyhound, see id. at 32, 71, 92, and thus was "already skilled as a professional bus driver."  Plaintiff's Affidavit in Opposition to the Motion for Summary Judgment, filed May 17, 2007 (Docket #15) ("Pl. Aff.") ¶ 11(c).  Each day, the student and instructor completed a "daily test check," which enumerated successfully and unsuccessfully performed skills.  See Pl. Dep. at 32-33.  Koff would discuss each skill with the student and then the student and Koff would sign the form.  See id. at 33, 36-40.  Starting on the seventh day, there was a new form, the "Line Training Qualification Form," which was also discussed and signed.  See id. at 40-45.  Cunningham did not sign the form for the tenth day. See id. at 48-49.

2

The first day of training was an orientation course. See id. at 19. Koff began cursing, primarily at Bacchas, and striking the top of the bus on that day. See id. at 63-64, 66-67; see also id. at 60-61 ("I asked Mr. Koff to stop discriminating with the minorities . . . . I said, can I talk to you man to man on the bus. . . . Look, Mr. Koff, can you stop cursing at the Jamaican kid [Bacchas] . . . ."). When asked "what curses did you classify as discriminatory?" id. at 62-63, Cunningham testified:

> Well, any cursing is discriminatory when you were an instructor, you know. You just cursing at black people, that's just crazy. You hitting the top of the bus when somebody is driving and you're not doing it to the white guy; what are you doing? What the fuck are you doing? Are you out of your fucking mind? Are you stupid? So, yes, that's discrimination.

Id. at 63. Cunningham was asked what on the second day of training he considered to be "discrimination against you based on race," and he responded: "[Koff] wasn't cursing at me but that doesn't make a difference. He was cursing at the other guy, Ken Bacchas, that's again[st] me because I am sitting there, that's against me personally." Id. at 71. See also Pl. Aff. ¶ 9(b) ("[W]hen a minority occupied the driver's seat, Mr. Koff had no reservations and frequently hit over the driver's head, followed by profane [and] abusive language."). Ly and Bacchas testified that Koff cursed at everybody. See Deposition of Michael Andy Ly, dated Jan. 12, 2007 (attached as Ex. E to Kamara Dec.) ("Ly Dep.") at 10; Deposition of Kenville Bacchas, dated Jan. 12, 2007 (attached as Ex. F to Kamara Dec.) ("Bacchas Dep.") at 7-9. Koff at one point testified that he never cursed at students but also stated that he cursed when "having conversations with all men." See Deposition of Robert Koff, dated Jan. 12, 2007 (attached as Ex. F to Pl. Aff) ("Koff Dep.") at 5-6, 44, 46.

Koff testified that he struck the top of "the bus for a particular training reason." See id. at

6.  He explained:

> Part of their observation is to notice the overhead clearances.  The bus is ten feet six inches.  They must notice any overhead clearances, for the fact that they are less than that.
> If they start going underneath one and they don't, the first couple of days, I hit the top behind the sign on the inside.  They usually get a little startled, and they wake up, and they realize, why I hit the sign.

Id. at 44.

Cunningham contended that Gibbons failed to stop for some red lights but was not reprimanded.  See Pl. Dep. at 61, 70, 91; Pl. Aff ¶¶ 9(a), 12(e), 12(g).  Ly and Bacchas testified that they did not remember Gibbons running red lights.  See Ly Dep. at 9, 15; Bacchas Dep. at 6.  Cunningham also said that Koff put his leg in the door and hit the top of the bus while the minority students were driving.  See Pl. Dep. at 61-64, 70.  Koff later explained:

> When someone doesn't look at the door, when it's closed, and they close the door, I put my arm in the door.  Then when they start to move, I tell them.  This is an observation tactic, to make sure they're not moving the bus, before the doors are closed to eliminate the possibility of a pedestrian being dragged.  It's something that all instructors do to eliminate that from the students.

Koff Dep. at 34.

Cunningham stated that Koff continued to curse at Bacchas and put his foot in the door on the second and third days.  See Pl. Dep. at 71-72.  Ly and Bacchas testified that Koff put his foot in the door while all four students were driving.  See Ly Dep. at 12; Bacchas Dep. at 8.

Cunningham testified that on the third or fourth day:

> A. . . . I asked Mr. Koff to stop discriminating with the minorities and giving the white guy a head's up.
> Q.  When did you tell Mr. Koff to stop discriminating with the minorities?
> A.  I didn't say minorities, that's a legal term.  I said, can I talk to you man to man on the bus.  That was day three or four.  Look, Mr. Koff, can you stop cursing at the Jamaican kid [Bacchas] and stop putting the foot in the door for everyone, just cut it out or I am going to management.  He said, go ahead.

4

Pl. Dep. at 60-61.  Cunningham further explained:

> I told him to knock it off.  I told him, stop cursing at the guys because I already told the guys, don't say anything; how old are you, 26; how old are you, talking about Michael and Ken, 26, 27.  Then I said, let's go to management. They said, you a [sic] talk to management.  We can't go to management.  He is management. They are not going to hire us.  I said, don't say anything, I am older, I will talk to him.  Day three, I went to him, can I talk to you for a minute.  I said, knock off cursing and putting your arm and foot on the door.  All this [is] not necessary. You shouldn't be doing this.  If you keep it up, I'm going to management.

Id. at 74.  Cunningham did not go to the management about Koff's actions, see id. at 78, 82, but

after his complaint, Koff started to curse at Cunningham, see id. at 61.

Koff withheld instructions from his students regarding the proper way to turn – which

Gibbons knew from his Greyhound experience.  See id. at 80, 92.  Koff made Ly take off his hat,

but not Gibbons.  See id. at 80-81.  Ly testified that he did not remember himself or Gibbons

wearing a hat.  See Ly Dep. at 14-15.  Bacchas also testified that he did not remember Gibbons

wearing a hat.  See Bacchas Dep. at 10.  Koff too did not remember Gibbons's hat.  See Koff

Dep. at 6-7.

Cunningham Ly, and Bacchas failed the first exam, see Pl. Dep. at 24, 42; Ly Dep. at 24;

Line Training Qualification – Day 7, Student: Kenville Bacchas, dated Feb. 3, 2005 (attached at

Ex. K of Kamara Dec.).  Cunningham and Ly were then assigned Thomas Moore as their new

instructor for days eight and nine of training.  See Pl. Dep. at 24, 42; Ly Dep. at 25.  On the

eighth day, when Moore first got on the bus, he asked, "[W]ho is that guy Cunningham messing

with my man Koff?"  See Pl. Dep. at 60, 85.  Moore immediately made it clear to Cunningham

that he would not pass him.  See id. at 60, 85.  Moore made Cunningham do tasks twice that the

other students only did once.  See id. at 86.

Cunningham failed the second test.  See id. at 24, 46, although Ly and Bacchus passed,

5

see Ly Dep. at 25; Line Training Qualification, Day 9, Kenville Bacchas, dated Feb. 7, 2005

(attached at Ex. K to Kamara Dec.).  Cunningham was assigned two new instructors, Leonard

Ross and Emmet Thomas, for the tenth day of training.  See Pl. Dep. at 24, 47.  On that day, he

was asked to drive first, which was "very unusual."  See id. at 87-88.

      Cunningham failed the third test.  See id. at 24-25, 47.  He was then given a resignation

form, but refused to sign it.  See id. at 25-26, 49; see also Ex. J to Kamara Dec. (resignation

form).  He was terminated that day.  See Pl. Dep. at 26.

      B.  Procedural History

      Cunningham filed a complaint with the New York State Division of Human Rights

("SDHR") in which he claimed that the NYCTA treated him in a discriminatory manner on the

basis of his race and retaliated against him.  See Verified Complaint Pursuant to Executive Law,

Article 15, dated Feb. 14, 2005 (attached as Ex. N to Kamara Dec.) ("SHDR Compl."); see also

Pl. Dep. at 49-50.  The Division of Human Rights denied relief.  See Determination and Order

After Investigation, dated Nov. 10, 2005 (attached as Ex. O to Kamara Dec.).  Cunningham also

filed an Equal Employment Opportunity ("EEOC") Complaint.  See Letter (undated) ("EEOC

Compl.") (attached as Ex. I to Pl. Aff.).

      On May 30, 2006, Cunningham filed his Complaint in the instant action.  See Complaint

(Docket #2).  The NYCTA now moves for summary judgment dismissing the complaint.  See

Not. of Mot; Defendants' [sic] Local Civil Rule 56.1 Statement of Material Facts, dated Mar. 15,

2007 (attached to Not. of Mot.) ("Def. 56.1"); Kamara Dec.; Memorandum of Law in Support of

Defendant's Motion for Summary Judgment, filed June 1, 2007 (Docket #20) ("Def. Mem.").  In

response, Cunnigham submitted an affidavit and various exhibits.  See Pl. Aff.  The NYCTA

filed a reply brief.  See Reply Memorandum of Law in Support of Defendant's Motion for

Summary Judgment, filed June 1, 2007 (Docket #21).

II. SUMMARY JUDGMENT STANDARD

      Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is

appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A

material issue is a "dispute[ ] over facts that might affect the outcome of the suit under the

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Id.  Thus, "'[a] reasonably disputed, legally essential issue is both genuine

and material'" and precludes a finding of summary judgment.  McPherson, 174 F.3d at 280

(quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  On a motion for summary

judgment, the Court "'must view the evidence in the light most favorable to the non-moving

party and draw all reasonable inferences in its favor.'" Sologub v. City of New York, 202 F.3d

175, 178 (2d Cir. 2000) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568,

572 (2d Cir. 1993)).

      When determining whether a genuine issue of material fact exists, courts must resolve all

ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson, 477 U.S.

at 255 (citation omitted); accord Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005).

Nevertheless, once the moving party has shown that there is no genuine issue as to any material

fact and that it is entitled to a judgment as a matter of law, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted), and "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); accord Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 42 (2d Cir. 1986), cert. denied 479 U.S. 1088 (1987).  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."  Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotations omitted).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

III.  DISCUSSION

      The NYCTA moves for summary judgment dismissing the complaint on three grounds: (1) that Cunningham cannot make out a prima facie case of discrimination, see Def. Mem. at 11-15; (2) that he did not exhaust his complaint of retaliation, see id. at 16-17; and (3) that he cannot prove retaliation, see id. at 17-18.  The first two grounds are discussed below.

    A.  Discrimination

      Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The

plaintiff carries the initial burden of establishing a prima facie case of discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Although Cunningham characterizes his complaint as one of "failure to hire," see Complaint ¶ 4, it is undisputed that he was in fact hired by the NYCTA as a probationary bus operator.  Thus, his case is best characterized as a complaint that he was adversely affected through his discharge.  "In order to establish a prima facie case of racial discrimination in firing in violation of . . . Title VII, the plaintiff must show that [he] belongs to a protected class, that [he] was qualified for the position, that [he] was discharged, and that [his] discharge occurred 'in circumstances giving rise to an inference of racial discrimination.'"  Hargett v. Nat'l Westminster Bank, USA, 78 F.3d 836, 838 (2d Cir.) (quoting Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464 (2d Cir. 1989)), cert. denied, 519 U.S. 824 (1986).

        If the plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  See McDonnell Douglas, 411 U.S. at 802; Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006), cert. denied, 127 S. Ct. 1855 (2007); Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001); accord St. Mary's, 509 U.S. at 506-07.  If the employer articulates a non-discriminatory reason for its actions, the presumption of discrimination is eliminated and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).  This is because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains at all times with the plaintiff."  St. Mary's, 509 U.S. at

9

507.   Thus, the plaintiff "must always prove that the conduct at issue . . . actually constituted discrimination."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks, emphasis and bracketing omitted).

"Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation," Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998), and thus a Title VII plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256.

Here, it is unnecessary to determine whether Cunningham has made out a prima facie case of discrimination.  Assuming arguendo he has done so, NYCTA has offered a non-discriminatory reason for his discharge: specifically, that he failed all three bus driver examinations – a fact that Cunningham appears not to dispute.  See Def. 56.1 ¶ 6 (probationary bus operators given three chances to pass the exam; if unsuccessful, they are asked to resign or are discharged); Pl. Aff. ¶ 6 ("Undisputed."); Def. 56.1 ¶ 32 (after failing three times, Cunningham was given the option of resigning or being dismissed); Pl. Aff. ¶ 32 ("Undisputed.").

The gravamen of Cunningham's claim of discrimination is that Koff treated him adversely during the training period on account of his race.  See, e.g., Pl. Aff. ¶¶ 18(a), 40(a); Pl. Dep. at 80 ("[H]e didn't give us information to pass the test, and it's not the first time you have institutionalized discrimination from keeping information keeping you from passing a test, that is discrimination."); Pl. Dep. at 92 ("So I charge discrimination by keeping information vital to our passing.").  The connection between this adverse treatment and Cunningham's discharge appears to be that the adverse treatment resulted in Cunningham's not getting the training he needed to

10

pass the driving tests.  The failure to pass the driving tests of course resulted in his termination.

Cunningham's evidence on this point, however, is insufficient to permit a jury to conclude that he was denied adequate training because of his race.  Cunningham asserts that Koff cursed and struck the top of the bus when the non-white members of his group were driving, but this fact does not show that Cunningham did not receive adequate training compared to the white member of the group.  In addition, he has not shown that the mere fact that the non-white members of the group were the subject of criticism is reflective of discrimination particularly given that Cunningham concedes that the sole white member, Gibbons, was "already skilled as a professional bus driver,"  Pl. Aff. ¶ 11(c).  See Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (where a plaintiff attempts to show that "the employer treated plaintiff less favorably than a similarly situated employee outside his protected group . . . [he] must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self") (internal quotation and citation omitted).  Cunningham's allegation that Koff withheld from the minority students instructions on turning a bus, see Pl. Dep. at 80, 92; Pl. Aff. ¶¶ 9(b), 11(c), does not permit a finding of discrimination because it "fail[s] to specify any comparable white employee who received better training."  Seymore v. Reader's Digest Ass'n, Inc., 493 F. Supp. 257, 264 (S.D.N.Y. 1980).  In other words, Cunningham does not provide evidence from personal knowledge that superior instruction was given to Gibbons, the white employee.

Cunningham asserts at one point that Gibbons ran red lights without consequence.  See Pl. Dep. at 61, 70, 91; Pl. Aff ¶¶ 9(a), 12(e), 12(g).  But even if there were instances in which Koff treated members of the group differently, Cunningham has offered no proof as to why these

11

incidents of differential treatment resulted in Cunningham's failure to pass all three driving tests. In other words, there is an insufficient showing of a causal connection between any allegedly discriminatory treatment and the failure to pass the driving test.  Indeed, it is uncontroverted that the other members of the group – including the only other black person, Bacchas  – ultimately passed the second driving test.

To the extent Cunningham may be contending that all three driving tests were not administered impartially, and that this failure was based on race, that claim must be rejected as well.  Cunningham has not provided evidence that would allow a reasonable jury to conclude that there existed a racial disparity in the administration of all three tests.  There is no evidence that elucidates the various criteria used for administration of the test, how these criteria should have been judged, how Cunningham contends he performed with respect to each, and how Cunningham contends that his performance on these criteria measured up against other drivers who passed the test.  Notably, the other two minority drivers with respect to whom any information is provided – Bacchas and Ly – actually passed the test.

B.  Retaliation

Cunningham's complaint also alleges retaliation.  See Compl. ¶ 4.  He asserts that he spoke with Koff about his treatment of Bacchus on the third or fourth day of training.  See Pl. Dep. at 60-61, 74.  It appears that Cunningham is alleging that this conversation resulted in retaliation from the next trainer, Michael Moore.  Cunningham explained:

> Well, I felt that Mr. Koff told Michael Moore, had some kind of a discussion, not to hire me – told Thomas Moore not to hire me because on day eight when Mr. Moore got on the bus, first thing he said, who is that guy Cunningham messing with my man Koff.  Then he told me that he was not going to hire me, that's as we sat outside of the facility, sanitation.  So I feel retaliated against me not getting hired, not getting in the boys / club because of the retaliatory process.

12

Pl. Dep. at 59-60.

"A plaintiff may bring an employment discrimination action under Title VII . . . only after filing a timely charge with the EEOC." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001) (internal citations omitted) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)).  Here, Cunningham's complaints to the SDHR and EEOC made no claim of retaliation.  See SDHR Compl; EEOC Compl.  While, contrary to the NYCTA argument, Def. Mem. at 16-17, the failure to file of such a charge does not result in a jurisdictional bar, the filing is a precondition to suit.  See Holtz, 258 F.3d at 83; Francis, 235 F.3d at 768 ("presentation of a Title VII claim to the EEOC is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action that can be waived by the parties or the court") (internal citation and quotation marks omitted).

There are "three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." Butts v. City of New York, 990 F.2d 1397, 1402 (2d Cir. 1993).  Those situations occur where the later claim: (1) alleges "retaliation by an employer against an employee for filing an EEOC charge"; (2) "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge"; or (3) "where the conduct complained of would fall within the 'scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination.'"  Id. at 1402-03 (quoting Smith v. Am. President Lines, Ltd., 571 F.2d 102, 107 n.10 (2d Cir. 1978)) (citations omitted).  The first two categories are inapplicable because Cunningham asserts that the retaliation occurred prior to the filing of the EEOC charge and the retaliation was independent of the claim of discrimination

alleged in the EEOC charge.

    To determine whether a plaintiff falls within the third category, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted). Here, neither the EEOC charge nor the SDHR charge makes any mention of Cunningham's complaint to Koff. Thus, there is no basis for finding that the claim of retaliation would have "grow[n] out of" the claim of discrimination made in those complaints. "Retaliation under Title VII has a specific meaning: retaliation for exercising one's right to complain about activity that violates the statute." Ofudu v. Barr Labs., Inc., 98 F. Supp. 2d 510, 515 (S.D.N.Y. 2000). Nothing in Cunningham's EEOC or SDHR complaint "would have put the EEOC on notice that [Cunningham] was making any allegation of retaliation for engaging in statutorily protected activity." Id. at 515-16 (granting summary judgment on retaliation claim because it was not mentioned in the EEOC complaint).

    Because Cunningham has not shown that he fits within any of the exceptions to the exhaustion rule, Cunningham's retaliation claim should be dismissed.

CONCLUSION

    For the foregoing reasons, the defendant's motion for summary judgment (Docket #19) should be granted.

        SO ORDERED.

Dated:  August 28, 2007
        New York, New York

                                    _____
                                    GABRIEL W. GORENSTEIN
                                    United States Magistrate Judge

14

Copies sent to:

Anthony S. Cunningham
1315 Amsterdam Avenue, Apt. 14-A
New York, NY  10027

Baimusa Kamara
New York City Transit Authority
Room 1209(g)
130 Livingston Street
Brooklyn, NY 11201

alleged in the EEOC charge.

To determine whether a plaintiff falls within the third category, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted). Here, neither the EEOC charge nor the SDHR charge makes any mention of Cunningham's complaint to Koff. Thus, there is no basis for finding that the claim of retaliation would have "grow[n] out of" the claim of discrimination made in those complaints. "Retaliation under Title VII has a specific meaning: retaliation for exercising one's right to complain about activity that violates the statute." Ofudu v. Barr Labs., Inc., 98 F. Supp. 2d 510, 515 (S.D.N.Y. 2000). Nothing in Cunningham's EEOC or SDHR complaint "would have put the EEOC on notice that [Cunningham] was making any allegation of retaliation for engaging in statutorily protected activity." Id. at 515-16 (granting summary judgment on retaliation claim because it was not mentioned in the EEOC complaint).

Because Cunningham has not shown that he fits within any of the exceptions to the exhaustion rule, Cunningham's retaliation claim should be dismissed.

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Docket #19) should be granted.

SO ORDERED.

Dated: August 28, 2007
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

14